**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **CALVIN WASHINGTON** | **CIVIL ACTION NO. 07-0537** |
| **VERSUS** | **JUDGE DOHERTY** |
| **MICHAEL J. ASTRUE, COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **MAGISTRATE JUDGE METHVIN** |

*SUPPLEMENTAL REPORT AND RECOMMENDATION*

The initial report and recommendation issued in this matter found that substantial evidence of record supported the Administrative Law Judge's (ALJ's) decision that the claimant was not disabled under the provisions of the Social Security Act. This matter is now before the magistrate judge on remand from the district judge for consideration of arguments presented by the claimant in his objection – specifically, for a determination as to whether the instant matter should be remanded to the Commissioner in light of the new medical evidence submitted.

*Background and Argument*

In his application for disability benefits, claimant alleged disability beginning January 5, 2004. His application was denied, and after an administrative hearing, the ALJ found the claimant not disabled on September 29, 2006. The Appeals Council denied his request for review on February 23, 2007, and this action followed.

In his objection to the report, the claimant states that his physical condition has deteriorated, and he has submitted new medical evidence[1] that he argues is in support thereof, as follows:

---

[1]The plaintiff also attached as exhibits to his memoranda a Radiology Report dated 1/20/2004, and an MRI dated 9/13/2004. These medical records are not new, and are contained in the record at Tr. 83 and Tr. 113.

1.  **Dr. John E. Cobb**:
    a.  Operative report dated June 26, 2007;
    b.  Discharge summary dated June 29, 2007;
    c.  Follow-up report dated July 30, 2007;
    d.  Operative report dated February 26, 2008

2.  **Psychiatric Evaluation**:  A December 11, 2007, psychiatric evaluation at Oceans Behavioral Hospital;

3.  **Nerve Conduction Study**: dated June 10, 2008.

Claimant, in his objection to the report and recommendation, states that he underwent two lumbar surgeries by Dr. Cobb after his claim was denied.  One surgery was performed on June 26, 2007, and another on February 26, 2008, and that his "physical condition has deteriorated tremendously since the Appeals Counsel [sic] denied a review of his claim."[2] Claimant also states that in December 2007, he was confined to Oceans Behavioral Hospital for depression, and continues treatment today with Dr. Salama for depression on an outpatient basis.

The claimant argues that these medical records "show his symptoms are more severe than the original records stated; and that these new medical records and test results provide more objective proof of claimant's disability."[3]

*Law and Analysis*

The court's review with regards to additional evidence is limited to determining whether the evidence requires a remand to the Commissioner for consideration of the new evidence.  42 U.S.C. § 405(g); Haywood v. Sullivan, 888 F.2d 1463 (5th Cir. 1989).  "[I]n order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the

---

[2]Rec. Doc. 17, p. 3.

[3]Rec. Doc. 17, p. 5.

failure to incorporate the evidence into the record in a prior proceeding." Leggett v. Chater, 67 F.

3d 558, 567 (5th Cir. 1995), citing, Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir.1987) (per

curiam). For such new evidence to be material, there must exist a reasonable possibility that it

would have changed the outcome of the Secretary's determination. Chaney v. Schweiker, 659

F.2d 676, 679 (5th Cir.1981).  Further, the new evidence must pertain to the contested time period

and not merely concern a subsequently-acquired disability or the deterioration of a condition that

was not previously disabling. Id.  New evidence that concerns a subsequently-acquired disability

or deterioration of a condition that was not previously disabling should become the subject of a

new application for disability benefits rather than justify a remand. See, e.g., Leggett, supra.

I.      Medical Records of Dr. Cobb, Operative Reports, and Nerve Conduction Study

For the reasons discussed below, I find that the reports plaintiff submitted from Dr. Cobb

constitute new and material evidence which the Commissioner should consider on remand.

The evidence regarding the surgery by Dr. Cobb is new, as it was not available at the time

of the hearing.  The Appeals Council denied review on February 23, 2007, and claimant's surgery

was not performed until June 26, 2007.[4]

The evidence applies to the contested time period, because the surgery had been

recommended before the ALJ's decision, and does not, therefore, reflect a deterioration in the

claimant's condition; rather, it was performed based on the condition of the claimant at the time

of the hearing.[5]  The ALJ was aware when she made her finding of not disabled on

---

[4]The claimant states delays in the surgery were caused by worker's compensation refusal to authorize the recommended surgery.

[5]The Commissioner argues the second surgery in 2008, was due to a car accident following the first surgery, which loosened the surgical hardware in the claimant's back.

September 29, 2006, that Dr. Cobb had recommended back surgery in October of 2005. The ALJ

observed, in fact, that "MRI scanning noted a broad-based protrusion at L3-4 on the right and

degeneration of the disc at L4-5 with facet joint hypertrophy;" a diagnosis of "post-traumatic

lumbar pain syndrome and degenerative disc with herniation on the right at L3-4," and that "a CT

and myelogram demonstrated a right-sided disc protrusion at L4-5 and L3-4 with bulging at L4-5

and L3-4."[6] The ALJ concluded, however, that because Dr. Cobb had examined claimant on

only two occasions, and many of the findings were normal on examination, the surgical

recommendation was not based upon the weight of medical evidence:

> In addition, the undersigned further notes in October 2005, Dr. Cobb suggested
> the claimant undergo drastic surgery including a fusion with hardware. The
> undersigned notes Dr. Cobb only examined the claimant on two occasions, once
> in 2004 and 2005. The undersigned further notes five months earlier, there was
> decreased range of motion of the lumbar spine on flexion and decreased range of
> motion of the cervical spine on flexion and rotation. The remaining joints had full
> range of motion. His gait was normal and he could walk on his heels and toes.
> There were no signs of radiculopathy or any other neurological deficits. The
> undersigned notes there was no medical evidence to support such drastic surgery.
> Therefore, more weight was given to the consultative examiner.[7]

The post-operative reports which are now available shed light on the prior MRI and

support Dr. Cobb's original recommendation of surgery.

Finally, the evidence is material, as there is a reasonable possibility that, had it been

available at the time of the administrative proceedings, it would have changed the

Commissioner's finding.

---

[6]Tr. 15.

[7]Tr. 17.

II.    Medical Records from Oceans Behavioral Hospital

I also find that the Psychiatric Evaluation by Oceans Behavioral Hospital of Lafayette

dated December 11, 2007, is new and material.[8]  The Oceans' Psychiatric Evaluation includes, in

pertinent part, the following:

**IMPRESSION:**

| | | |
|---|---|---|
| AXIS I: | Major depression, ***recurrent***, severe with psychotic feature. (Emphasis added). | |
| AXIS II: | No diagnosis. | |
| AXIS III: | Hypercholesterolemia. Back injury and surgery. | |
| AXIS VI: | Moderate. | |
| AXIS V: | **Last year 50,** currently 20. (Emphasis added). | |

**PAST PSYCHIATRIC HISTORY:** The patient had numerous inpatient
treatments in the past, as well as outpatient, at the Mental Health.[9]

The psychiatric evaluation reflects that the claimant had at the time of admission in 2007,

*and in the past*, significant and recurrent depression requiring multiple inpatient and outpatient

treatments.  The AXIS V, which reports a Global Assessment of Functioning (GAF),  reported a

20 on admission in 2007, and a 50 "last year," which would have been sometime in 2006, when

his disability was being assessed by the ALJ, and prior to the Appeals Council denial of review

on February 23, 2007.[10]  While it is not clear how far back the claimant has struggled with

---

[8]Rec. Doc. 18, Ex. 4.

[9]Rec. Doc. 18, Ex. 4.

[10]A GAF of 41-50 is described as "Severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).  A GAF of 11 -20 is described as "Some danger of hurting self or others (e.g., suicidal attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute).  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders , 4th ed., 1994), on Psyweb.com, at http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

depression, the Oceans' psychiatric evaluation states that "the patient reported that he has been depressed for the past four years and he relates the onset of his depression into being involved in an injury to his back and having to live with the pain."[11]

The record reflects that the claimant alleged back pain, "grouchiness," and depression in his SSA Function Report - Adult dated April 6, 2005. (Tr. 60 - 67). He continued to list in his Disability Report Appeal, dated September 1, 2005, "depressed" and "need back surgery" as limitations. (Tr. 68). However, the claimant's allegations of depression were not discussed, or even mentioned, by the Commissioner in the initial denial of the claim (Tr. 43 - 46), the ALJ in her Decision (Tr. 13 - 19), by the Appeals Council, or by the undersigned in the initial report and recommendation.[12]

At the hearing before the ALJ, the claimant testified that he had complained to his general family physician, Dr. Manuel, that he was depressed, and that Dr. Manuel had prescribed medication for the depression. However, the claimant testified that he quit taking the medication because it made him "all sluggish" and he was "just fighting the depression."[13] When queried about his depression by the ALJ, he explained that he was "short fused" and "get[s] angry."[14] Despite the allegations of depression, the ALJ did not discuss or mention the claimants' alleged impairment of depression in her decision.

---

[11]Psychiatric Evaluation, Rec. Doc. 18, Ex. 4.

[12]The claimant did not list any physicians, clinics, or hospitalizations for treatment for depression in these reports, and the ALJ had no medical records in front of her regarding depression or other psychiatric illness, even though apparently there was a GAF of 50 recorded somewhere in 2006. The ALJ found that the claimant was of limited education (Tr. 18), and although he was represented, it is conceivable that he was either embarrassed or did not understand the importance of listing all physicians, and not just those who treated his back.

[13]Tr. 145, 165.

[14]Tr. 164.

The claimant had good cause for not presenting the Oceans' evidence at the time of the

hearing, as it did not exist at that time – the Ocean's evaluation was in 2007, and the ALJ's

decision was in 2006. The new evidence pertains to the contested time period, as it indicates that

the claimant has a history of depression that he was struggling with during the period of alleged

disability. The Oceans' evaluation also references several past inpatient and outpatient

treatments for depression whose providers and dates are not all listed. However, the evaluation

clearly references a GAF of 50 in 2006, the year of the ALJ's Decision and prior to the Appeals

Council's denial in 2007, of a request for review. The extent of the claimant's struggles with

depression were either unknown or disregarded by the ALJ, as depression is not mentioned in her

Decision at all, even though the claimant claimed depression as an impairment on his claim

forms and testified that he suffered from depression and its effects at the hearing.

 The undersigned also finds that the new evidence is material, as a  review of the

claimant's Oceans' psychiatric evaluation, and its referenced underlying records reflecting

numerous in and out patient treatments for depression, when considered in combination with his

severe impairment of degenerative disc disease of the lumbar spine,[15] may well have changed the

outcome of the Commissioner's determination of disability.

Considering the foregoing, the undersigned concludes that remand is appropriate this

matter. See Ferguson v. Schweiker, 641 F.2d 243, 250, n. 8 (5th Cir.1981)(*overruled on other*

*grounds,* Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985) (remand is appropriate upon a

showing of "good cause," which includes an "inability to make a definitive ruling concerning a

claimant's disability based on the record before the court.").

---

[15]Tr. 15.

*Conclusion*

Considering the foregoing, it is **RECOMMENDED** that this matter be **REMANDED** for further proceedings pursuant to the Sixth Sentence of 42 U.S.C. § 405(g), in accordance with these findings.  On remand, the ALJ should consider the medical records submitted relevant to the claimant's spine.  The ALJ should also fully develop the record regarding the claimant's depression, including all of the claimant's medical records from Oceans Behavioral Hospital of Lafayette, and any other medical records that may be relevant to the claimant's depression or other mental impairments, and shall follow proper guidelines for the assessment of mental impairments.  The ALJ shall further consider  whether her conclusion is altered in light of the evidence contained in the those records.

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

**conclusions accepted by the District Court, except upon grounds of plain error.  See**

**Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on September 19, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)